UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cr-105 AGF |
| | ) | |
| LUKE EDWARD NICOZISIN, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the defendant LUKE EDWARD NICOZISIN, represented by defense counsel Timothy Smith, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count I of the Superseding Information, the government agrees to dismiss the Indictment pending against the defendant at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's Production, Distribution, Receipt or Possession of Child

1

Pornography between February 20, 2021, and October 15, 2021, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence within the range of 84 months to 144 months imprisonment. The parties understand and agree that the Court is not a party nor bound to follow this recommendation. Further, should the Court not follow this recommendation and sentence the defendant to a higher sentence, the parties agree that will not serve as a basis for the defendant to withdraw the plea of guilty.

The defendant agrees to forfeit to the United States all property subject to forfeiture under the applicable statute(s), and the defendant knowingly and voluntarily waives any right, title, and interest in all items (including all data contained therein) seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States, including, but not limited to: an Apple iPhone 11 and Dell laptop. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

3.    **ELEMENTS:**

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Distribution of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly distributed (2) using any means or facility of interstate or foreign commerce, including by computer, (3) images of child pornography, (4) which were visual depictions where the production

2

of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct.

**4.    FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

1.    On July 28, 2021, E., who was then a 15-year-old minor female, reported to a school resources officer that the defendant, who was then 20-years-old, sexually assaulted her the prior evening at a movie theatre. E. further reported that she met the defendant on SnapChat approximately 2-3 months prior to the incident. Through SnapChat messages, the defendant solicited nude photos from E. and she sent him approximately five photos of her nude breasts and buttocks. The defendant demanded that they meet in person and E. deleted him as a contact. A few weeks later, E. added the defendant back as a SnapChat contact. On July 27, 2021, E. told the defendant that she would be at a movie theatre that evening and invited him to see her. That evening, E. and the defendant met in a bathroom at the movie theatre and the two engaged in oral and vaginal intercourse. Shortly after E. reported this event, the defendant was arrested by Chesterfield Police Department on charges related to 4th degree child molestation. An ex parte order of protection order was subsequently filed restraining the defendant from contacting or being within 100 feet of E.

2.    On October 13, 2021, Victim 1, who was then a 15-year-old minor female, reported to her school resource officer that the defendant, who was then 20-years-old, had sent her nude photos of his genitals and videos of oral sex. Victim 1 further reported that she became friends with the defendant through SnapChat. Victim 1 told the defendant that she was 15-years-old.

When the defendant learned Victim 1's age, he responded that it was okay as long as she didn't
tell anyone. Shortly after, the defendant and Victim 1 began a sexual relationship. The defendant
sent nude pictures of his genitals to Victim 1 and asked her to do the same. The defendant also
asked Victim 1 if they could meet up in person for sex. On February 20, 2021, Victim 1 went to
the defendant's residence and the two engaged in sexual intercourse. The defendant refused to
wear a condom. Between February 20, 2021, and October 11, 2021, the defendant and Victim 1
engaged in unprotected sex over a dozen times at various locations within the Eastern District of
Missouri. On several of these occasions, the defendant used Victim 1's phone to take videos of
the two of them engaging in sexual intercourse. On other occasions, the defendant took sexually
explicit videos of Victim 1 using his own phone.

      3.     On October 13, 2021, detectives from Manchester Police Department interviewed
J., then a 15-year-old minor female. J. reported that the defendant had previously sent her nude
pictures and videos, but that she had since deleted them. In a later interview with the Child
Advocacy Center, J. stated that the defendant threatened her and her family if she did not agree to
engage in sexual acts with him. The defendant disputes this claim. J. refused and did not engage
in sexual intercourse with the defendant. At some point, J. posted a public SnapChat "My Story"
that warned other females about the defendant. J. stated that S., then a 12-year-old minor female,
contacted her in response to the SnapChat post. In a SnapChat message, S. told J. that she (S.) had
previously communicated with the defendant on SnapChat. In these SnapChat messages, S. told
the defendant that she was 12-years-old. S. further stated that the defendant sent her pictures of
his genitals and asked her and her friends for oral sex. The defendant disputes this claim. S. also
stated that the defendant sent her a video of what she believed was the defendant having sexual
intercourse with Victim 1.

4.      On October 20, 2021, law enforcement obtained a federal search warrant for the defendant's residence. Agents executed the warrant the following morning. At the residence were the defendant and his mother. The defendant was arrested on state charges related to the investigated conduct. He was not interviewed. Agents seized the defendant's Apple iPhone XR, a Lexar flash drive, a computer tower, and two condoms that depicted the defendant's Instagram account. The Apple iPhone XR was forensically examined and found to contain text messages with both Victim 1 and J.H. In some messages, the defendant asks Victim 1 if she and her friend can have a "threesome." In other messages, the defendant asks Victim 1 if they can engage in sex. In other messages, the defendant arranged sexual encounters with Victim 1.

5.      On October 25, 2021, P., who was then a 15-year-old minor female, was interviewed by the Child Advocacy Center. In that interview, P. stated that she met the defendant in April 2021 on SnapChat. P. told the defendant her age and he responded that age does not matter. The defendant then sent nude images of himself to P. and asked her to do the same. P. did not send any images or have sex with the defendant.

6.      On October 25, 2021, S., who was then a 12-year-old minor female, was interviewed by the Child Advocacy Center. In that interview, S. stated that she met the defendant on SnapChat and that she told the defendant her age. S. stated that the defendant sent a video of himself receiving oral sex. The defendant then asked S. to meet him at a park for oral sex and he drove to a park and waited for her there for approximately 45 minutes but S. never showed up. The defendant then told others in a Snapchat group message not to trust S. and she blocked him. The defendant admits that he knew that S. was a minor, but disputes that he was aware of her exact age. The defendant disputes the claim that he asked S. to meet him at a park for oral sex.

7.      During the course of the investigation, law enforcement took custody of Victim 1's Apple iPhone XS Max by consent. This device, which was produced outside the State of Missouri, was forensically examined. On this device, law enforcement discovered dozens of text messages between Victim 1 and the defendant, and 67 images that depict Victim 1 and the defendant engaged in sexual intercourse. In addition, law enforcement discovered 10 graphic video files that depict Victim 1 and the defendant engaged in sexual intercourse. In one video, labeled "IMG_8653.MP4," Victim 1 is on her knees performing oral sex on the defendant while he records the act. In another video, labeled "IMG_8670.MPG," the defendant is laying on his back on a bed and having sexual intercourse with Victim 1 while he holds Victim 1's cell phone and records the act. In another video, labeled "IMG_86777.MP4," the defendant records himself having sexual intercourse with Victim 1.

8.      In summary, the defendant admits that, in or about September 2021, the defendant knowingly used a facility or means of interstate commerce, i.e. the Internet and Snapchat, to distribute an image of child pornography, that is, an image of Victim 1, who was then a 15-years-old minor female, engaged in sexual intercourse with the defendant, to S.

## 5.    **STATUTORY PENALTIES:**

As to Count I, the defendant fully understands that the maximum possible penalty provided by law for the crime of Distribution of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both. The Court may also impose a period of supervised release of not more than **life** years and not less than five years. **The defendant fully understands that the crimes to which a guilty plea is being entered, Distribution of Child Pornography, requires a mandatory minimum term of imprisonment of at least 5 years.**

6

Additionally, per 18 U.S.C. § 2259A, defendant fully understands that for offenses committed on or after December 7, 2018, in addition to other assessments, the Court may impose an assessment of no more than $35,000.00 if convicted of any trafficking in child pornography offense as defined by § 2259(c)(3), which includes offenses under 18 U.S.C. §§ 2252A(a)(1) through (4).

6.    **U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a.    **Chapter 2 Offense Conduct:**

(1)    **Count I – Distribution of Child Pornography**

(a)    **Base Offense Level:** The parties agree that the base offense level is **thirty-two (32)**, as found in Sections 2G2.2(c)(1) and 2G2.1(a).

(b)    **Chapter 2 Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

(i)    **Two (2)** levels should be added pursuant to §2G2.1(b)(1)(B) because the "offense involved a minor who had attained the age of twelve years but not attained the age of 16 years."

(ii)    **Two (2)** levels should be added pursuant to §2G2.1(b)(2)(A) because the offense involved sexual contact.

(iii)    It is the Government's position that **four (4)** levels should be added pursuant to §2G2.1(b)(4) because the offense involved

7

material that portrays sadistic or masochistic conduct.  It is the defendant's position that this enhancement does not apply.

**b.**     **Chapter 3 Adjustments:** The parties recommend that the following adjustments, other than acceptance of responsibility, apply: None.

**c.**     **Acceptance of Responsibility:** The parties agree that **three (3)** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**d.**     **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is **thirty-seven (37)** or **thirty-three (33)** depending on whether the Section 2G2.1(b)(4) 4-level enhancement applies.

**e.**     **Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.**     **Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have

8

foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.   WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a.   Appeal:**   The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1)   Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2)   Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the defendant within or above that range.

    **b.   Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

9

**c.**  **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**  **OTHER:**

**a.**  **Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b.**  **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.**  **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  Some of these special conditions may include that defendant not possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box.  In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.  The defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

      **d.**    **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before September 30, 2023, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under Chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. § 2252A (transportation, distribution, receipt, possession, or access with the intent to view child pornography)).

      The assessment imposed under 18 U.S.C. § 3014 is in addition to the mandatory special assessment imposed under 18 U.S.C. § 3013.

      **e.**    **Possibility of Detention:**  The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **f.**    **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and

11

costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty. Under Section 2259(c)(3), the minimum amount of restitution per victim for each count of conviction is $3,000 for crimes occurring on and after December 7, 2018.

     **g.**   **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

**9.**   **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

    In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

12

require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following

13

conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

10.   **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

14

**11.    CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.    NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

3/30/23
_____
Date

_____
KYLE T. BATEMAN
Assistant United States Attorney

3-30-23
_____
Date

_____
LUKE EDWARD NICOZISIN
Defendant

3-3023
_____
Date

_____
TIMOTHY SMITH
Attorney for Defendant

15